UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

SKATTEFORVALTNINGEN,

Plaintiff,

- against -

470 SOUTH OCEAN BOULEVARD TRUST and JONATHAN E. GOPMAN, as trustee for the 470 South Ocean Boulevard Trust,

Defendants.

----------------------------------------X

**MEMORANDUM AND ORDER**

25 Civ. 1498 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Presently before the Court is an atypical application: defendants 470 South Ocean Boulevard Trust ("470") and Jonathan E. Gopman ("Gopman" and together with 470, "defendants" or the "Trust") move to retransfer this action to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). ECF No. 90 ("Mot."). For the reasons stated herein, the Court determines that retransfer is warranted under the specific circumstances of this case and grants the Trust's motion.

## I. **Procedural History**

Because the instant motion seeks to retransfer this case to the district in which it was originally brought, an overview of the procedural history is necessary before turning to the specific issues presented. Plaintiff Skatteforvaltningen ("SKAT"), "the agency of the government of Denmark charged with the assessment

and collection of Danish taxes[,]" ECF No. 94 ("AC") ¶ 13, initially brought this case on July 9, 2024 in the Southern District of Florida (the "Florida Court"). In its Amended and operative Complaint, filed on June 10, 2026, SKAT alleges that non-party Luke McGee ("McGee")[1] "established the 470 Trust as a vehicle to transfer his ill-gotten assets" into "an 8,804-square foot oceanfront townhouse located at 470 S. Ocean Boulevard in Palm Beach, Florida" (the "Florida Property"). Id. ¶ 41. Specifically, SKAT alleges that the Florida Property "was purchased with . . . approximately $29.6 million of McGee's earnings from AdaptHealth Corp., which, upon information and belief, he would not have obtained had he disclosed" the existence of a fraud that McGee perpetrated upon SKAT and the "Danish government's subsequent[] investigations" into that fraud. Id. In its Amended Complaint, SKAT brings claims for (1) Actual Fraudulent Transfer under Florida law (Count One); (2) Constructive Fraudulent Transfer under Florida law (Counts Two, Three, and Four); (3) Fraudulent Asset Conversion (Count Five); (4) an equitable lien (Count Six); and (5) a declaratory judgment "declaring that Florida's homestead exemption does not protect the Palm Beach Mansion from the enforcement of SKAT's judgment because it was purchased with the proceeds of fraud or egregious conduct

---

[1] McGee was initially named as a defendant in this action but was voluntarily dismissed prior to the filing of the Amended Complaint. ECF No. 22.

and that SKAT is therefore entitled to an equitable lien on the Palm Beach Mansion." Id. ¶¶ 49-92.

On September 20, 2024, defendants filed a motion to dismiss in the Florida Court, and in the alternative, defendants sought transfer to the Southern District of New York. ECF No. 19. SKAT opposed the motion to dismiss, as well as transfer to this Court. ECF No. 26.

After full briefing, the Florida Court found "transfer of venue to be a more appropriate remedy than dismissal," and transferred the case to this Court. ECF No. 74 (the "Florida Court Order") at 8. Specifically, the Florida Court's decision relied on a Settlement Agreement between SKAT and McGee, which at that time was the subject of litigation between McGee and SKAT before this Court. See Stein et al. v. Skatteforvaltningen, No. 23-cv-2508-NRB (the "Stein Litigation").[2] The Settlement Agreement contained a forum selection clause providing that "the exclusive forum for the resolution of any dispute arising out of, or in connection with or relating to this Agreement . . . shall be the federal and state courts of the State of New York." Florida Court Order at 4 (alteration in original) (citing ECF No. 19-1 ¶ 12). The Florida Court explained that "the Settlement Agreement supplies the basis upon which Plaintiff claims it is entitled to

[2] In its opposition papers, SKAT now refers to the Stein Litigation as the "Maple Point Action." See e.g., ECF No. 95 ("Opp.") at 1.

the funds McGee entrusted to [the Trust], and is central to the allegations of 'concerted misconduct' by McGee in transferring the funds." Florida Court Order at 7. Accordingly, applying the principles of equitable estoppel, the Florida Court determined that SKAT was "attempting to effectuate the Settlement Agreement against McGee (a signatory) by asserting numerous causes of action arising from McGee's financial dealings with nonsignatory Defendants." Id. As a result, the dispute "[fell] within the purview of the Agreement's forum selection clause[,]" and the Florida Court determined that transfer of the case to this Court was warranted. Id. at 7-8. In so doing, the Florida Court also rested its decision in part on the fact that "[SKAT] and McGee are currently embroiled in a pending action in the Southern District of New York, reinforcing that this related matter belongs there in the interests of justice." Id. at 8 (referring to the Stein Litigation).

Shortly thereafter, the case was transferred to the Southern District of New York, see ECF No. 75, and assigned to the undersigned as related to the Stein Litigation. See ECF No. 76. Since this case was transferred, the merits of the Stein Litigation were resolved following a bench trial held April 29, 30, and May 1, 2025, after which this Court filed an opinion, Stein Litigation, ECF No. 215, and entered judgment in favor of SKAT in the amount of $163,984,894.05, see Stein Litigation, ECF Nos. 220, 221. While

other parties to the Settlement Agreement have pending appeals, McGee has withdrawn his notice of appeal. See Stein et al. v. Skatteforvaltningen, No. 25-2887, Dkt. No. 35 (2d Cir. Feb. 18, 2026); see also Stein Litigation, ECF No. 271.

II. **The Instant Motion**

This case was mostly inactive for over a year following transfer. However, on March 16, 2026, defendants filed a letter motion requesting a "pre-motion conference in advance of the Trust's anticipated motion (i) to transfer venue pursuant to 28 U.S.C. § 1404(a) or, (ii) in the alternative, to dismiss the Action pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6)." ECF No. 84 at 1. Defendants filed their motion to transfer on May 27, 2026, Mot., and the motion was fully briefed as of June 17, 2026, ECF No. 98 ("Reply").

In the pending motion, the parties have reversed their respective positions. It is now defendants who argue that the Florida Court is the proper venue, and it is now SKAT who resists transfer to the Florida Court.

Specifically, defendants argue that circumstances have meaningfully changed in the year since the transfer because the Stein Action has concluded, and "all that remains is SKAT's effort to collect on the Judgment." Mot. at 6. Further, defendants maintain that this Court "lacks jurisdiction to resolve all of SKAT's claims[,]" because the "Court lacks jurisdiction to attach,

turn over, or enforce liens against real property outside its territorial jurisdiction." Id. Defendants also contend that transfer is warranted because this case raises novel issues of Florida law that are better suited to be decided by the Florida Court, id. at 7-10, and that the transfer will not prejudice SKAT, id. at 10-11.

On Reply, defendants further argue that the factors typically considered by the Courts in this district when reviewing a transfer motion favor retransfer to the Florida Court, Reply at 3-5; that the retransfer of this case will assist in the efficient resolution of pending discovery disputes, id. at 5-6; and that this Court's inability to enforce an equitable lien was not considered when the action was originally transferred, id. at 6-7.

SKAT, for its part, disputes each of defendants' arguments and argues chiefly that: (1) the post-transfer circumstances were reasonably foreseeable by the Florida Court at the time of transfer, Opp. at 10-12; (2) there is no impediment to the Court granting SKAT's requested relief, id. at 12-13; and (3) the Court is well-equipped to address the issues of Florida law presented by this case, id. at 13-15.

## LEGAL STANDARDS

When a retransfer to the original court is sought, "[t]he [transferee] court has the power" pursuant to 28 U.S.C. § 1404(a), "to retransfer the case back to the District from which the case

was transferred." Wade Park Land Holdings, LLC v. Kalikow, 2023 WL 2614243, at *7 (S.D.N.Y. Mar. 23, 2023) (citing HSM Holdings, LLC v. Mantu, I.M. Mobile Ltd., 2021 WL 3115486, at *2 (S.D.N.Y. July 21, 2021)). However, this Court is mindful that a "duel between courts of transfers and retransfers would subject the parties to unacceptably mounting expenses and delays," U.S. Bank Nat'l Ass'n v. Bank of Am. N.A., 916 F.3d 143, 152-53 (2d Cir. 2019), and that a "motion to retransfer implicates the law-of-the-case doctrine," Chen v. Zhang, 2025 WL 785744, at *4 (S.D.N.Y. Mar. 12, 2025). Nonetheless, retransfer is appropriate when facing "impelling and unusual circumstances or if the transfer is manifestly erroneous."[3] Wade Park, 2023 WL 2614243, at *7. "Impelling and unusual circumstances arise when unanticipable post-transfer events frustrate the original purpose for transfer." Id. (internal quotation marks omitted).

**DISCUSSION**

In its opposition to the motion to retransfer, SKAT observes that entry of judgment was foreseeable at the time of transfer. See, e.g., Opp. at 10-11. SKAT also notes that the settlement agreement and its forum selection clause upon which the Florida Court based its decision remains in place. Id. at 11. SKAT, however, fails to mention that McGee has withdrawn his appeal from

[3] This Court in no way suggests that the initial transfer was manifestly erroneous.

the judgment that was entered following the determination that McGee and his coconspirators had breached the settlement agreement.

Of all the post transfer events, the most significant is the filing of a declaratory judgment action by SKAT in the Southern District of Florida, in which SKAT literally seeks the same relief as it seeks by its declaratory judgment claim in this case. In both cases, SKAT seeks a declaration "that Florida's homestead exemption does not protect the Palm Beach Mansion from the enforcement of SKAT's judgment because it was purchased with the proceeds of fraud or egregious conduct and that SKAT is therefore entitled to an equitable lien on the Palm Beach Mansion." Compare AC ¶ 92, with Skatteforvaltningen v. 470 South Ocean Boulevard Trust et al., No. 26-cv-80715 (the "Florida Declaratory Judgment"), ECF No. 1 ¶ 61 (S.D. Fla. June 15, 2026). Both the 470 Trust and Gopman are also defendants in the Florida Declaratory Judgment.

Undoubtedly, the filing of the new litigation in the Southern District of Florida against the same defendants and seeking identical relief as the declaratory judgment claim in this case affects the proper forum analysis. There is now a risk of two courts reaching different conclusions on the same claim. Considering that the declaratory judgment seeks application of Florida's homestead exemption, it makes logical sense for those

claims, and this litigation, to proceed in the Florida Court. Further, in light of the fact that the operative complaint in this action at the time of transfer did not include a claim for declaratory judgment, the Florida Court could not have reasonably anticipated that the Florida Declaratory Judgment Action would be filed at the time of transfer. Accordingly, the landscape of this litigation has changed in an unanticipable way that warrants retransfer to the Florida Court.[4]

Additionally, as defendants argue, there is a question as to whether this Court has jurisdiction to grant a significant portion of the relief that SKAT seeks. To begin, SKAT's Amended Complaint seeks an equitable lien on the Florida Property. AC ¶¶ 84-87. However, under New York law, this Court lacks jurisdiction to enforce liens against real property outside of its territorial jurisdiction. See, e.g., Lok Prakashan Ltd. V. India Abroad Publications, Inc., 2002 WL 1585820, at *2 (S.D.N.Y. July 16, 2002)

---

[4] We note that the Florida Declaratory Judgment is not the only case recently filed in the Southern District of Florida that seeks to clarify what assets are available to SKAT to satisfy its judgment against McGee. First, SKAT filed another action against numerous "entities that McGee owns, controls or established[,]" bringing claims for Actual Fraudulent Transfer against those entities. Skatteforvaltningen v. Fresh Pond Investment LLC et al, No. 26-cv-80647, ECF No. 1 ¶¶ 13, 75-153 (S.D. Fla. June 2, 2026). Second, several entities that are not party to either this litigation or the Stein Litigation filed their own declaratory judgment actions against SKAT seeking a declaration that, among other things, "any collection activities by SKAT against [the entities] related to Florida assets must occur in Florida and must comply with Florida law, [and] (ii) [the entities] were not recipients of any fraudulent transfers from L. McGee[.]" Heneghan et al v. Skatteforvaltningen, No. 26-cv-80511, ECF No. 1-1 ¶ 9 (S.D. Fla. May 1, 2026). While these cases do not involve the same defendants and do not seek the same relief as in this case, nonetheless they lend further weight to Florida courts as the locus of the ongoing litigation between SKAT and other entities related to McGee.

("It is well established that a New York court cannot attach property that is outside of its jurisdiction."); JSC VTB Bank v. Mavlyanov, 154 A.D.3d 560, 561 (N.Y. App. Div. 2017) (finding that the lower court "should not have ordered attachment of real estate located in California, i.e., outside its jurisdiction.").

SKAT points to two cases in which "courts outside of Florida have imposed equitable liens against Florida property where the debtor purchased that property with funds obtained through fraud or egregious conduct[.]" Opp. at 12 (citing Anderson v. Sullivan, 2007 WL 2288142, at *1-4, *6-7 (D.N.D. Aug. 7, 2007) and McCallan v. Wilkins, 657 B.R. 493, 499-501 (M.D. Ala. 2022)). However, SKAT's authority is scant, and both cases are out of circuit and non-binding.

SKAT also seeks "the appointment of a receiver to take charge of the Palm Beach Mansion" as a remedy in this case. Opp. at 13; AC ¶ 94(d). Significantly, SKAT's request for the appointment of a receiver is predicated on a Florida statute. See Opp. at 13 (citing Fla. Stat. § 726.108(1)(c)(2)). The availability of a receivership is not the only issue in this case that invokes Florida law. Indeed, the heart of SKAT's allegations in this action is that "McGee transferred approximately $30 million through the 470 Trust and into an 8,804-square foot, oceanfront townhouse located in Palm Beach, Florida . . . to improperly exploit Florida's homestead exemption." AC ¶ 1. Thus, the issues

presented in this case are intricately intertwined with the homestead protections enshrined in the Florida Constitution. See Fl. Const. Art. X § 4. Where, as here, a case requires consideration and resolution of "nuanced and complicated issues" of the laws of another state, transfer is appropriate. Placek v. Shopoff, 2018 WL 4572253, at *8 (S.D.N.Y. Sep. 24, 2018).[5]

Further, and in any event, whatever the issues may be with a New York court's ability to effectuate judgment collection in Florida, there is no question that a Florida court would not face similar challenges. As such, it is significantly more efficient for those disputes to be resolved in Florida in the first instance.

Finally, we note that SKAT's Amended Complaint no longer alleges that the Florida Property was purchased using the proceeds of McGee's fraud upon SKAT that formed the basis of the Settlement Agreement which was at the heart of the Stein Litigation. Instead, SKAT now alleges that the Florida Property "was purchased with approximately $29.6 million of McGee's earnings from AdaptHealth Corp." Compare ECF No. 1 ¶ 70 with AC ¶ 41. Of course, had the Court concluded that its prior considerable involvement with this

[5] To be clear, this Court's ability to analyze and apply Florida law is not the issue, and this Court declines to affirm that it could not competently do so. Nonetheless, the unique and potentially novel interplay of Florida law and the allegedly fraudulent nature of the purchase of the Florida Property counsel in favor of resolution by a Florida court. That is particularly true in the context of Florida's homestead protections, which share few similarities with the laws of New York or other states. See Chames v. DeMayo, 972 So. 2d 850, 856 (Fla. 2007) ("Given the variety of state homestead protections, comparisons to other jurisdictions are difficult and generally of limited value.").

case gave it a knowledge base that could not be easily duplicated in another court, we would have entered that knowledge base into our calculus. However, with the additional submissions in this case and the conclusion of the Stein Litigation as to McGee other than as to matters of judgment collection, it is clear that this Court does not have special knowledge about the source of the funds used to purchase the Florida Property.

**A. Traditional Factors Weigh in Favor of Transfer**

Finally, while the retransfer of a case presents unique considerations, an analysis of the factors that courts consider when analyzing a typical transfer motion further supports the Court's decision. Generally, when "deciding whether to transfer a case from one judicial district to another, a court first examines whether the case could have been brought in the other district." Pence v. Gee Grp., Inc., 236 F. Supp. 3d 843, 849 (S.D.N.Y. 2017). Obviously, there can be no question that this case could have been brought in the Southern District of Florida as it had been. See ECF No. 1.

"If the case could have been brought in the other district," the Court "then examines a number of factors," including "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the

attendance of unwilling witnesses, and (7) the relative means of the parties." Id. "Courts in this district have also considered (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interest of justice." Id. "There is no rigid formula for balancing these factors and no single one of them is determinative. Instead, weighing the balance is essentially an equitable task left to the Court's discretion." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (internal citations and quotation marks omitted).

Here, factors one through five and eight weigh in favor of retransfer. Specifically, as to factor one, while SKAT now argues that this case should remain in the Southern District of New York, its initial choice of forum was the Southern District of Florida. Two, as the Trust argues, the witnesses with the greatest relevance to this proceeding are located in Florida. Mot. at 3. Three, it is likely that relevant documents and sources of proof will be located in Florida, where the Florida Property is located. Four, the defendants are each located in Florida, while SKAT is the taxing authority of the government of Denmark and is at home in neither New York nor Florida. Five, at the judgment collection stage, the operative facts center around the purchase of the Florida Property and are likely to be in Florida. Finally, as to factor eight, this case is certain to raise issues of law that are unique to Florida, including application of the Florida Homestead

Exemption and whether SKAT can recover against the Florida Property should it be shown that the property was purchased with proceeds from fraudulent activity. The remaining factors six, seven, and nine, are neutral. Accordingly, all factors together weigh significantly in favor of retransfer in this case.

**CONCLUSION**[6]

For the foregoing reasons, the Court determines that retransfer of this case to the Southern District of Florida is appropriate at this time and grants defendants' motion to transfer. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 89 and transfer this case to the United States District Court for the Southern District of Florida.

Dated: July 23, 2026
New York, New York

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[6] The Court is aware that the Trust requested oral argument. See ECF No. 89. However, given that the outcome of our decision is based on legal doctrine, the Court determined that oral argument would not be productive.